## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**IN RE:**                                                  **CASE NO.: 08-40084-LMK**

### OLIN CONSTRUCTION COMPANY INC.                    **CHAPTER 11**

**Debtor.**

_____/

## FIRST AMENDED PLAN OF REORGANIZATION

Olin Construction Company Inc., Debtor and Debtor-In-Possession, ("Debtor"), proposes the

following First Amended Plan of Reorganization pursuant to Chapter 11 of the Bankruptcy Code.

## ARTICLE 1

## DEFINITIONS AND CONSTRUCTION OF TERMS

The following terms when used in this Plan have the following meanings:

1.01    Administrative Expense Claim means any right to payment constituting a cost or

expense of administration of the Chapter 11 case under sections 503(b) and 507(a)(1) of the

Bankruptcy Code, including, without limitation, any actual and necessary cost and expenses of

preserving the estate of the Debtor, any actual and necessary cost and expenses of operating the

business of the Debtor, any indebtedness or obligations incurred or assumed by the Debtor in

Possession in connection with the conduct of then business, including, without limitation, for the

acquisition or lease of property or an interest in property or the rendition of services, all

compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court

under section 330 or 503 of the Bankruptcy Code. Any fees or charges assessed against the estate

of the Debtor under section 1930 of Chapter 123 of title 28 of the United States Code shall be

excluded from the definition of Administrative Expense Claim and shall be paid in accordance

with Section 4.01 of the Plan.

1.02    Allowed means, with references to any Claim against the Debtors, (i) any claim

that has been listed by the Debtors in their Schedules, as such Schedules may be amended by the

Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and

not disputed or contingent and for which no contrary proof of claim has been filed,(ii) any Claim

allowed hereunder, (iii) any Claim that is not disputed, (iv) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Reorganized Debtor pursuant to a Final Order of the Bankruptcy Court or under Section 6.06 of the Plan, or (v) any Claim that, if disputed, has been allowed by Final Order; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.  Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Administrative Expense Claim or Claim from and after the Commencement Date.

  1.03 "Bankruptcy Code" shall mean the Bankruptcy Reform Act of 1978, 11 U.S.C. Section 101, et seq., as amended, which governs this reorganization proceeding.

  1.04 Ballot means the form distributed to each holder of an impaired Claim that is entitled to vote to accept or reject the Plan on which is to be indicated (i) acceptance or rejection of the plan.

  1.05 Bankruptcy Court means the United States Bankruptcy Court for the Northern District of Florida having jurisdiction over the Chapter 11 Case.

  1.06 Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United States Code, and any Local Rules of the Bankruptcy Court.

  1.07 Business Day means any day other than a Saturday, Sunday, or any other day on which commercial banks in Florida are required or authorized to close by law or executive order.

  1.08 Causes of Action means, without limitation, any and all actions, causes of action, controversies, liabilities, obligations, rights, suits, damages, judgments, Claims, and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable or directly or derivatively, existing or hereafter arising, in law, equity, or otherwise, based in whole

2

or in part upon any act or omission or other event occurring prior to the Commencement Date or during the course of the Chapter 11 Cases, including through the Effective Date.

1.09     Claim shall have the meaning set forth in section 101 of the Bankruptcy Code.

1.10     Collateral means any property or interest in property of the estate of the Debtor subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

1.11     "Confirmation Date" shall mean the date on which the Bankruptcy Court shall enter an order confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.12     "Confirmation Order" shall mean entry of an order by the Bankruptcy Court confirming the provisions of this Plan pursuant to section 1129 of the Bankruptcy Code.

1.13     Disputed means, with reference to any Claim, any Claim proof of which was timely and properly filed, and in such case or in the case of an Administrative Expense Claim, any Administrative Expense Claim or Claim which is disputed under the Plan or as to which the Debtor has interposed a timely objection and /or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim, proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly filed. A claim that is Disputed by the Debtor as to its amount only, shall be deemed Allowed in the amount the Debtor admits owing, if any, and Disputed as to the excess.     1.14     "Effective Date of This Plan" shall be thirty (30) days subsequent to the date the Court enters its Order Confirming this Plan, provided that no stay of the Confirmation Order is then in effect.

1.15     "General Unsecured Claim" shall mean any Claim against the estate of the Debtor other than an Administrative Claim, a Priority Claim or a Secured Claim.

3

1.16   "General Unsecured Creditor" shall mean the holder of an Allowed General Unsecured Claim, to include estimated claims.

1.17   "Ordinary Operating Costs" shall mean the Debtor-In-Possession's monthly expenses necessary for its operation and to carry out the Plan.

1.18   "Pending Claim" shall mean a claim for which an application for allowance is pending before the Bankruptcy Court on the effective date of the Plan or an Application for an Administrative Claim which is filed with the Bankruptcy Court subsequent to the effective date of this Plan but prior to the date that the Debtor's estate is closed.

1.19   "Post Confirmation Administrative Claims" shall mean claims incurred by the Debtor's estate after the Confirmation Date of this Plan in the prosecution and defense of actions and claims as described in paragraph 6.02 and 6.04 of this Plan, including without limitation, claims for services rendered and reimbursements of expenses incurred by Debtor's attorneys, accountants, appraisers or other professionals.

1.20   "Plan" shall mean this Plan of Reorganization in its present form or as it may be modified, amended or supplemented from time to time.

1.21   "Priority Claim" shall mean a claim entitled to priority treatment under 11 U.S.C. Section 507 (a) (2) – (a) (6).

1.22   "Rejection Claim" shall mean a claim arising under 11 U.S.C. Section 502 (g) from rejection under 11 U.S.C. Section 365 or under this Plan of an executory contract or unexpired lease of the debtor that has not been assumed.

1.23   "Reorganization Proceeding" shall mean this proceeding under Chapter 11 for the reorganization of the Debtor which presently is being administered under Case No. 08-40084-LMK

1.24   Schedules means the schedules of assets and liabilities, and the statement of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code and

4

Bankruptcy Rule 1007, and all amendments and modifications thereto filed with the Bankruptcy
Court through and including the Confirmation Date.

1.25    Interpretation; Application of Definitions and Rules of Construction. Wherever
from the context it appears appropriate, each term stated in either the singular or the plural shall
include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter
gender shall include the masculine, feminine and neuter. Unless otherwise specified, all section,
article, schedule, or exhibit references in the Plan are to the respective Section in, Article of,
Schedule to, or Exhibit to, the Plan. The words "herein", "hereof", "hereto", "hereunder", and
other words of similar import refer to the Plan as a whole and not to any particular section,
subsection, or clause contained in the Plan. The rules of construction contained in section 102 of
the Bankruptcy Code shall apply to the construction of the Plan. A term used herein that is not
defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that
and shall not limit or otherwise affect the provisions of the Plan.

# ARTICLE II

## TREATMENT OF ADMINISTRATIVE

## EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

2.01    Administrative Expense Claims. Except to the extent that any entity
entitled to payment of any Allowed Administrative Expense Claim agrees to a less
favorable treatment, each holder of an Allowed Administrative Expense Claim shall
receive Cash in an amount equal to such Administrative Expense Claim on the later of
the Effective Date or the date such Administrative Expense Claim becomes an Allowed
Administrative Expense Claim, or as soon thereafter is as is practicable; provided,
however, that Allowed Administrative Expense Claims representing liabilities
incurred in the ordinary course of business by the Debtor in Possession or liabilities
arising under loans or advances to or other obligations incurred by the Debtor in

5

Possession shall be paid in full and performed by the Reorganized Debtor in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

2.02     Professional Compensation and Reimbursement Claims. All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date pursuant to sections 503(b) (2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall (i) file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date that is sixty (60) days after the Effective Date or such other date as may be fixed by the Bankruptcy Court and (ii) if granted such an award by the Bankruptcy Court, be paid in full in such amounts as are allowed by the Bankruptcy Court. (a) on the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable or (b) upon such other terms as may be mutually agreed upon between such holder of an Administrative Expense Claim and the Reorganized Debtors. But in any event, said allowed Administrative Expense Claim shall not be paid unless funds are received from Debtors pending lawsuit against Moore Bass Consulting, Inc. and others. All U.S. Trustee fees shall be paid, in full, when due, prior to the closing of the Bankruptcy Estate.

## **ARTICLE III**

## **CLASSIFICATION OF CLAIMS AND INTERESTS**

For purposes of this Plan, there shall be four (4) groups of claims and interest, as follows:

| 3.01 | Group 1 | - Class I All administrative claims. |
| 3.02 | Group 2 | - Class II All allowed secured priority claims. |
| 3.03 | Group 3 | -All allowed secured claim, divided into classes as follows: |

6

|  | Class III -A | Ameris Bank |
|---|---|---|
|  | Class III-B | Superior Bank |
|  | Class III-C | Superior Bank |
|  | Class III-D | Wakulla Bank |
| 3.04 | Group 4 | - All allowed unsecured claim. |
|  | Class IV-A | Unsecured Creditors. |

## ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS

## THAT ARE NOT IMPAIRED UNDER THIS PLAN

The following classes of claims and interests are not impaired under the provisions of this Plan:

4.01    The allowed Administrative claims of Class I creditors, shall be paid in full, in cash as available, on the effective date of the Plan or upon the allowance of such claims by final order of the Bankruptcy Court, whichever may be applicable upon recovery of monies if any, from pending breach of contract litigation. These claims consist of professional services of Debtors' attorney's, above any initial retainer, and the Office of the U.S. Trustee and are estimated as follows:

Attorney/Bankruptcy    $13,000.00 (estimated) in addition to the retainer paid

Special Counsel unknown pending success and recovery in pending state court action

U.S. Trustee    $ 325.00 (estimated)

## ARTICLE V

## TREATMENT OF CLAIMS AND INTERESTS

## THAT ARE IMPAIRED UNDER THIS PLAN

7

5.01     There are five (5) classes of impaired creditors under Debtor's Plan as that term is defined in the Bankruptcy Code and this Plan; namely:

Class III A.     Ameris Bank has a secured claim of approximately $525,123.54 as of the date of Debtors petition on a permitted commercial lot located on the Carrabelle River in Carrabelle, Florida. See legal description, attached hereto as Exhibit E. The lot is fully permitted for five (5) condominiums, has an existing dock for up to ten (10) boat slips, with utilities and submerged land lease. A structured Relief from Stay Order has been entered allowing Debtor to enter into a sales contract prior to June 30, 2008. Debtor was unable to produce a contract; and, as such, hereby surrenders said real property identified in Exhibit E, as attached hereto, to said creditor in full satisfaction of the debt, upon recording of Debtors Plan of Reorganization as Confirmed by the U.S.

Class III B. Superior Bank has a secured claim in the approximate amount of $283,741.57 as of the date of Debtors petition. Said claim is secured by a lot and townhouses located in the Sands of Carrabelle. See legal description, attached hereto as Exhibit F. Debtor hereby surrenders said real property identified in Exhibit F, as attached hereto, in full satisfaction of said debt, upon recording of Debtor's Plan of Reorganization as Confirmed by the U.S. Bankruptcy Court.

Class III C. Superior Bank has a secured claim in the approximate amount of $942,152.14 as of the date of Debtors petition. Said claim is secured by 15 lots in the Sands of Carrabelle development, two (2) lots in Picketts Addition to the City of Carrabelle and Lot 20 in Anglers Harbor, in Carrabelle, Florida. See legal description attached hereto as Exhibit G. Debtor surrenders said real property identified in Exhibit G, as attached hereto, in full satisfaction of said debt, upon recording of Debtor's Plan of Reorganization as Confirmed by the U.S. Bankruptcy Court.

Class III D.     Wakulla Bank has a secured claim on a debt of $2,018,417.26 on sixteen (16) commercial, platted real property lots, located on U.S. Highway 98 in Carrabelle, Florida.

8

Based upon the value of the real property of $1,706,400.00 as set forth in the Motion for Relief from Stay as filed by Wakulla Bank and its Proof of Claim as filed in these proceedings, the unsecured debt portion is $312,017.20 as of the date of the filing of Debtors petition. Said claim is partially secured by the multiple commercial lots. See legal description, attached hereto as Exhibit H. Debtor hereby surrenders said real property identified in Exhibit H, as attached hereto, in full satisfaction of Wakulla Banks secured portion of its claim, upon recording of Debtor's Plan of Reorganization as confirmed by the U.S. Bankruptcy Court.

(b) Group 4 Class IV Unsecured Creditors:

Class IV-    General Unsecured Creditors. Debtor's general unsecured creditors have aggregate and/or estimated claims of $1,206,164.30. Said creditors shall be paid pro rata, after administrative claims, from the proceeds, if any, from Debtor pending civil law suit against Moore Bass Consulting, Inc. and others, if any. If funds are available to pay one hundred (100) percent of the claim, interest of at least (6) percent, will be paid.

## ARTICLE VI

## MEANS FOR EXECUTION OF THE PLAN

6.01    Debtor shall fund its Plan from recovery of any monies from its pending state court litigation against Moore Bass Consulting, Inc. and others.

6.02    All rejection or surrender deficiency claims must be filed with the Bankruptcy Court, with a copy to the attorney for the Debtor, on or before forty-five (45) days prior to the date of the Court's Confirmation hearing. The Debtor will have thirty (30) days in which to allow such claims. If not so allowed, it will be deemed disputed.

6.03    Attached as Exhibits A, B and C are abstracts of allowed claims filed for secured/unsecured priority, secured creditors, and unsecured creditors respectively. The Exhibits include a list of all allowed claims by classes and the allowed amount by the Debtor. If the dollar amount of the listed allowed claim is deemed incorrect, the creditor must notify the Debtor and their attorney in writing within thirty (30) days of receipt of this Plan stating the amount believed

9

to be correct. If the parties are able to agree on a corrected amount, the amount of the listed claim will be amended accordingly. Approval of the "Plan" shall constitute approval of the amount of the listed "allowed" claim unless an objection to the amount listed has been served and filed prior to the approval of the Plan. Disputed claims, as valued by the Debtor, will be allowed for voting purpose, and the Debtor will not object to such creditors voting on the "Plan". Failure by the Debtor to object to or to examine any claim for the purposes of voting on this Plan shall not be deemed a waiver of the Debtor's right to object to or to re-examine such claim in whole or in part. Debtor and creditors will schedule resolutions of disputed claims including disputed amounts with the Bankruptcy Court as soon as practical, and if

possible, within thirty (30) days prior to confirmation hearing of this Plan. Disputed claims shall not participate in a dividend hereunder unless a valid claim was filed with the Bankruptcy Court on or before June 11, 2008, the bar date set by the Court or other such dates as the Court has set, and any objections have been resolved.

6.04      On the Effective Date of this "Plan", and after satisfaction in full of allowed administrative claims, through its attorney, the Debtor, as disbursing agents, shall commence payments as set forth in Articles IV and V of this "Plan". Should funds be available for a one hundred (100) percent dividend, interest, if funds are available, will be paid to the Class IV creditors.

6.05      Holders of Post Confirmation Administrative Claims which arise in connection with the prosecution of actions to secure and defend the property of the Debtor's estate shall be compensated for services rendered and reimbursed for actual expenses incurred from the recovery of monies, if any, from the Debtor's pending state court litigation, upon Ordered the Bankruptcy Court and prior to distribution to the Class IV creditors.

6.06      Debtor anticipates the execution of this Plan (substantial consummation), as proposed, should not exceed one (1) year from confirmation.

## **ARTICLE VII**

10

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.01        All executory contracts and unexpired leases of the Debtor, or portions

thereof, not previously rejected or assumed or assigned under 11 U.S.C. Section 345 with

approval of the Bankruptcy Court are hereby rejected.

7.02        All rejection or surrender deficiency claims are to be filed, objected to

and determined in accordance with the provisions of Paragraph 6.03 and 6.04 of this "Plan".

### ARTICLE VIII

### RETENTION OF JURISDICTION

8.01. The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of,

and related to, the Chapter 11 Case and Plan pursuant to, and for the purpose of, sections 105(a)

and 1142 of the Bankruptcy Code and for, among other thing, the following purposes:

(a)        To hear and determine pending applications for the assumption or rejection of

executory contracts or unexpired leases and the allowance of cure amounts and Claims resulting

therefrom;

(b)        To hear and determine any and all adversary proceedings, applications and

contested matters;

(c)        To hear and determine any objections to Administrative Expense Claims or

Claims;

(d)        To enter and implement such orders as may be appropriate in the event the

Confirmation Order is for any reasons stayed, revoked, modified, or vacated;

(e)        To issue such orders in aid of execution and consummation of the Plan, to the

extent authorized by section 1142 of the Bankruptcy Code;

(f)        To consider any amendments to, or modifications of, the Plan, to cure any defect

or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including,

without limitation, the Confirmation Order;

11

(g)     To hear and determine all applications for compensation and reimbursement of expenses of professionals under section 330, 331, and 503(b) of the Bankruptcy Code;

(h)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan;

(i)     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Code.

(j)     To recover all assets of the Debtor and property of the Debtors' estate, wherever located;

(k)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

(l)     To resolve any Disputed Claims;

(m)    To determine the scope of any discharge of any Debtor under the Plan or the Bankruptcy Code; if applicable;

(n)     To hear any other matter not inconsistent with the Bankruptcy Code; and

(o)     To enter a final decree closing the Chapter 11 Case.

## **ARTICLE IX**

## **MISCELLANEOUS PROVISIONS**

9.01.   Effectuation Documents and Further Transactions.     The     Reorganized Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

9.02    Exemption from Transfer Taxes.        Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the

12

Plan, the creation of any mortgage, deed of trust, or other security interest, the making  or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any merger agreements or agreements of consolidation , deeds, bill of sale, or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.  All sale transactions consummated by the Debtor and approved by the Bankruptcy Court on and after the Commencement Date through and including the Effective Date, including without limitation, the transfers and surrenders effectuated under the Plan,, the sale by the Debtor of owned property pursuant to Section 363(b) of the Bankruptcy Code, and the assumption , assignment, and sale by the Debtor of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code shall be deemed to have been made under, in the furtherance of, or in connection with the Plan

and, thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

9.03    Payment of Statutory Fees.  On the Effective Date, and thereafter as may be required, the Debtor shall pay all fees payable pursuant to Section 1930 of Chapter 123 of Title 28 of the United State Code.

9.04    Post-Effective Date Fees and Expenses.  From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course and without the necessity for any approval by the Bankruptcy Court shall, pay the reasonable fees and expenses incurred in connection with the implementation and consummation of the Plan.

9.05    Amendment or Modification of the Plan.    Alterations, amendments, or modifications of or to the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended, or modified, satisfies the conditions of section 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied

13

with section 1125 of the Bankruptcy Code. The Plan may be altered, amended, or modified at any time after the Confirmation Date and before substantial consumption, provided that the Plan, as altered, amended, or modified, under section 1129 of the Bankruptcy Code and the circumstances warranting such alterations, amendment, or modification do not materially and adversely change the treatment of the Claim of any holder.

9.06    Revocation or Withdrawal of the Plan. The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

9.07    Severability    If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent

with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

9.08    Governing Law    Except to the extent that the Bankruptcy Code or other federal law is applicable, or to extent an exhibit or schedule hereto or in any Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and

14

constructed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principals of conflict of laws thereof.

9.10    Binding Effect.    The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of the Claims, and their respective successors and assigns, including, without limitation, the Reorganized Debtors.

9.11    Exhibits/Schedules.    All exhibits and schedules to the Plan, including any Plan Supplement, are incorporated into and are part of the Plan as if set forth in full herein.

9.12    Notices.    All notices, requests, and demands to or upon the Debtor's to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Olin Construction Co., Inc.
Attention: Olin Granthum
P.O. Box 180190
Tallahassee, FL 32318

Thomas B. Woodward, Esquire
P.O. Box 10058
Tallahassee, FL 32302

Dated: August 4, 2008

Olin Construction Co., Inc.

/S/ Olin Granthum                                             /S/ Thomas B. Woodward
By: Olin Granthum                                            Attorney for the Debtor
Its: President                                                     FL Bar No.: 0185506
                                                                        P.O. Box 10058
                                                                        Tallahassee, FL 32302
                                                                        850-222-4818

## PLAN OF REORGANIZATION
### EXHIBIT A
### SECURED CREDITORS

| CLASS III/CREDITOR | | CLAIM NO.: | DEBT/ALLOWED |
|---|---|---|---|
| A. | Ameris Bank | 3 | $523,123.51 |
| B. | Superior Bank | 8 | $283,741.57 |
| C. | Superior Bank | 7 | $942,152.14 |
| D. | Wakulla Bank | 11 | $1,706,400.00 |

### PLAN OF REORGANIZATION
### EXHIBIT B
### PRIORITY CREDITORS

Doris Maloy, Tax Collector          Claim No.: 4                    $290.25

### PLAN OF REORGANIZATION
### EXHIBIT C
### UNSECURED CREDITORS

| CLASS IV/CREDITORS | CLAIM NO.: | DEBT |
|---|---|---|
| Lonnie Meirer Linda Humphries | 5 | $40,589.82 |
| Pitney Bowes Inc. | 6 | $2,152.41 |
| Zurick American Ins. Co. | 2 | $1.00 (estimated) |
| Moore Bass Consulting | NA | $1.00 |
| Olin Granthum | NA | $422,000.00 |
| Olin Properties, Inc. | NA | $337,869.98 |
| Wakulla Bank | NA | $20,635.05 |
| DeSota & Associates | NA | $38,005.00 |
| Wakulla Bank | 11 | $312,017.20 |
| Capital City Bank | 9 | $2,392.03 |
| Capital City Bank | 10 | $30,110.95 |
| Matt Groom, CPA | NA | $390.00 |

## PLAN OF REORGANIZATION
## LEASES/EXECUTORY CONTRACTS
## EXHIBIT D

**LESSOR**             **COLLATERAL**             **ASSUME/REJUECT**

NONE

PLAN OF REORGANIZATION
EXHIBIT E

Beginning in the West Edge of Marine Street, at the Corner of Marine and Clara Streets, Running North along Marine Street Fifty (50) feet, thence West or Westerly to low water mark of Carrabelle River, thence Southerly along Low Water Line of Carrabelle River, Fifty (50) feet, more or less, to the North side of Clara Street, thence East along Clara Street to marine Street and to place of beginning.

Marine Street and Clara Street both shown on the Official Map of Carrabelle as Recorded in Plat Book 2 at Page 20 of the Public Records of Franklin County, Florida.

Subject property being more particularly described by a recent survey by Edwin G. Brown & Associates, Inc., dated July 16, 1991, being Job No. 91-116 (P5c#8348), as follows:

PARCEL ONE: Begin at the intersection of the West Right-of-Way Boundary of Marine Street with the North Right-of-Way Boundary of Clara Street and Proceed North Along Said West of Right-of-Way boundary 50.00 feet, thence run South 82 degrees 19 minutes 58 seconds West 47.91 feet to the Approximate mean High Water Line, thence South 19 degrees 18 minutes 56 seconds East along said approximate mean high water line 50.59 feet, more or less, thence run North 82 degrees 19 minutes 58 second East 31.02 feet, more or less to the POINT OF BEGINNING.

PLAN OF REORGANIZATION
EXHIBIT F

Lot 4, block 71, Sands of Carrabelle, A Subdivision as Per Map or Plat thereof as
Recorded in Plat Book 8, Page 12, of the Public Records of Franklin County, Florida.

PLAN OF REORGANIZATION
EXHIBIT G

Lots 1-12, Block 72 and Lots 4-9 Block 63, Sands of Carrabelle, a Subdivision as per Map or Plat as Described in Plat Book 8, Page 12 of the Public Records of Franklin County, Florida.
Also:
Lots 9 and 10, Block C, Range 2(88), Pickett's Addition to the City of Carrabelle, Franklin County, Florida, a Subdivision as per Map or Plat thereof as Recorded in Plat Book 2, Page 20, of the Public Records of Franklin County, Florida.
Also:
Lot 3 and the Southerly 40 Feet of Lot 4, and Lots 6, 8, 9 and 10, Block C, Range 3(89), Pickett's Addition to the City of Carrabelle, Franklin County, Florida, a Subdivision as per Map or Plat thereof as Recorded in Plat Book 2, Page 20, of the Public Records of Franklin County, Florida.
Also:
Lot 20, Anglers Harbor, According to the Plat thereof, Recorded in Plat Book 8, Page 8, of the Public Records of Franklin County, Florida.

PLAN OF REORGANIZATION
EXHIBIT H

Lots 1-9 and 12 through 18.  Block 46 (Old Block 25) Kelly's Plat of the City of
Carrabelle, as per Map or Plat thereof Recorded in Plat Book 2, Page 20, of the Public
Records of Franklin County, Florida.